LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, Michael Allen, Wa–Swa–Gon Treaty Association, et al., Plaintiffs–Appellees,

v.

STOP TREATY ABUSE–WISCONSIN, INCORPORATED and Dean Crist, Defendants–Appellants.

Nos. 94–1469 and 94–2066.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 7, 1994.

Decided Dec. 8, 1994.

Brian L. Pierson (argued), Irvin B. Charne, Hall, Patterson & Charney, Milwaukee, WI, for plaintiffs-appellees.

Dean M. Crist (argued), pro se.

Before CUMMINGS, FLAUM and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

In July 1991 plaintiff Lac Du Flambeau Band of Lake Superior Chippewa Indians ("LDF"); Michael Allen, the Tribe's chairman; the Wa–Swa–Gon Treaty Association;[1] and four members of the LDF filed an amended complaint seeking redress for breach of their rights as native citizens to be free from violence and threats of violence while exercising their right to fish. The defendants were Stop Treaty Abuse–Wisconsin, Inc. ("STA"), a Wisconsin corporation with its principal place of business in Woodruff, Wisconsin; 16 agents of STA residing in Wisconsin; and three county sheriffs. The gravamen of the amended complaint was that by engaging in racially motivated activities

---

1. The Wa–Swa–Gon Treaty Association is an unincorporated association of members of the LDF and others supporting the exercise of off-reservation treaty-recognized fishing rights.

violating the plaintiffs' spearfishing rights in Wisconsin lakes under federal treaties, defendants contravened 42 U.S.C. § 1982. This section provides that:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

Among other things, defendants are alleged to have assaulted, battered and shouted racial slurs at plaintiffs, their families and friends; rammed and attempted to swamp spearers' canoes; threatened spearers with violence; clogged boat landings; blocked lake access roads; surrounded plaintiffs at landings to prevent them from moving freely; and breached police barriers to prevent LDF members from exercising their spearfishing rights. The defendant sheriffs allegedly forced spearers and families and friends of spearers to stand with anti-treaty protesters, knowing that they would be verbally and physically harassed by protesters.[2]

On March 15, 1991, the district court granted plaintiffs a preliminary injunction and on January 6, 1992, granted them summary judgment and permanent injunctive relief on the LDF's § 1982 claim. Because full relief was available under § 1982, the district court dismissed plaintiffs' other claims. The final judgment permanently enjoined STA from interfering with the LDF's exercise of fishing rights. On July 17, 1992, the district judge entered a judgment for fees and costs in favor of LDF under 42 U.S.C. § 1988.

In 1993 we reversed the district court's award of summary judgment. While admitting that on the facts of this case it was "an extremely close call," *Lac du Flambeau,* 991 F.2d at 1261, and that the "stench of racism was unmistakable" from the record, *id.* at 1263–1264, this Court held that the issue of racial motivation was not appropriate for summary judgment. We remanded the case to the district court for a bench trial to allow defendants an opportunity "to demonstrate the sincerity of their assertions of an absence of racial motivation." *Id.* at 1264.

From the evidence adduced at the bench trial held on remand, the district judge found "that defendants' interference with plaintiffs' spearfishing was racially motivated, that is, it would not have occurred but for the racial animus of defendants and their followers." *Lac du Flambeau,* 843 F.Supp. at 1286. Defendants challenge this finding, but we conclude that the evidence of racial animus presented on remand readily supported the district court's judgment and therefore affirm.

*Evidence of racial motivation*

In her opinion on remand from this Court, Judge Crabb has marshalled six pages of evidence to show that defendants' interference with plaintiffs' spearfishing was racially motivated. *Lac du Flambeau,* 843 F.Supp. at 1286–1291. There is no need to restate all the evidence in the opinion below supporting the district judge's conclusion. As shown there, STA's purpose was to stop tribal members from exercising their off-reservation treaty rights including their rights to spear and net fish. STA's co-founder and chief spokesperson, defendant Dean Crist, was opposed to LDF's spearing and netting of fish even though applicable treaties gave the Lake Superior Chippewas such rights.

A brief summary of the most egregious examples of defendants' conduct amply demonstrates the basis for Judge Crabb's findings. Spearfishing protesters yelled numerous racial insults at the Indians—among them the accusation that all Indians are on welfare and filling up Wisconsin's jails. STA members called spearers "Tonto," "redskin," "welfare warriors" and "timber niggers" and stated that taxpayers had paid for their boats; protesters also mocked an Indian chant and caricatured an Indian ceremonial dance. STA members were heard to say that Indians could not find their food stamps because they kept them under their work boots.

In addition to ridiculing Indian culture and traditions, protesters' racist rhetoric took more violent forms as well. The protesters advocated spearing an Indian to save a walleye and urged supporters to drown Indians.

---

2. The history of this litigation appears in 759 F.Supp. 1339 (W.D.Wis.1991), 781 F.Supp. 1385 (W.D.Wis.1992), 843 F.Supp. 1284 (W.D.Wis. 1994), and in 991 F.2d 1249 (7th Cir.1993).

As the district judge reported at one point in her opinion:

> Protesters yelled, "Dead Indian, dead Indian" and sang, "A half breed here; a half breed there," to the tune of "Old McDonald had a farm." At Eau Pleine Reservoir, they referred to Indian women as squaws and bitches and said, "The only good Indian is a dead Indian." In 1989, they said that "Custer had the right idea."

843 F.Supp. at 1289.

Defendants employed these racial slurs to exploit the deep-seated anti-Indian racism in northern Wisconsin. 843 F.Supp. at 1294. Defendant Crist claimed that he lacked any racial animus and but for his protest activities had a good relationship with Indians in the community, but called no Indian to testify in support of this claim.

### Analysis

■ The district court's finding that defendants acted with a racial motivation cannot be set aside "unless clearly erroneous." *Halas v. Consumer Servs., Inc.*, 16 F.3d 161, 164 (7th Cir.1994). That finding was supported by abundant evidence and was not clearly erroneous. We adhere to the view expressed in our prior STA opinion that use of racial slurs here provides evidence of prohibited intent against this minority group.[3] *Lac du Flambeau*, 991 F.2d at 1263.

On appeal defendants maintain that their only motivation was to save fish (presumably so that they could catch them with rod and reel). Since only Indians can spear, they argue that any attack on spearing is necessarily an attack on Indians. Seeking cover in the Supreme Court's opinion in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. ——, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), defendants point out that a necessary coincidence between an activity and a protected class is alone insufficient to establish that protests of the activity are motivated by animus toward the class. However, the fact that one can legitimately protest spearing without being motivated by racial animus in no way immunizes these protests. There is a vast distinction between an attack on the group's right to participate in the activity and these attacks on the group.

Defendants' claims that only a concern for fish motivated them and that they aimed their attacks only at the Indians' right to spear are fatally undercut by the racially biased, inaccurate discussions of Indians' welfare status in STA's own literature. Whether or not people spearing fish receive federal benefits is certainly irrelevant to defendants' concern for fish. Defendants' fall-back position is that they are protesting against Indians as a political group with certain rights, *e.g.*, welfare and spearing, but not as a racial class. But any such distinction is meaningless here where defendants mocked Indian ceremonies and included in their protests derogatory stereotypes of Indians as fat and lazy.

Defendants claim that "[c]onsistent with the spirit of free and open debate, the effectiveness of an emotional protest depends largely upon the protesters' *ad hominem* attack" Br. 21. The trial court found that defendants' racial *ad hominem* attacks were indeed effective in motivating protesters to bear the cold Wisconsin nights at the boat landings:

> Although defendants would have been angry at anyone who restricted their fishing (including the Wisconsin Department of Natural Resources), it was a particular source of irritation that the threat came from persons they despised, whom they saw as fat, lazy, living on welfare at taxpayer expense and lacking appreciation for the wildlife resources of northern Wisconsin. The animosity for Indians as a group is what provided the fuel that kept protesters warm at the landings at ice-out time. Defendant Crist knew this and he employed it to his own ends deliberately.

843 F.Supp. at 1295.

■ Defendants finally contend that even if some protesters were motivated by racial

---

**3.** After this lawsuit was filed, the STA board authorized the destruction of all of its membership lists. As we noted in *Brown & Williamson Tobacco Corp. v. Jacobson*, 827 F.2d 1119, 1134 (7th Cir.1987), documentary destruction while litigation is pending is an indication that the documents would be unfavorable to the destroying party. Thus we give little credence to STA's claims that non-members made the bulk of the racist remarks.

prejudice fueled by STA rhetoric, defendants themselves and defendant Crist in particular were not so motivated and thus cannot be liable under the statute. They claim that the district court erroneously focused on *"how* Crist did what he did" and not *"why* he did it." Reply Br. 10. In resolving such a claim a court is faced with an obvious proof problem. Another's motivation can only be inferred from his statements and actions. The trial court must be able to take defendants' racist statements at face value and assume unless there is evidence to the contrary that they meant what they said. The district court found that despite his protests to the contrary, defendant Crist also was motivated by racial animus. Such a credibility determination by the finder of fact is entitled to deference and can virtually never amount to clear error. *Rennie v. Dalton,* 3 F.3d 1100, 1110 (7th Cir.1993).

■ Moreover, as the trial court correctly noted, regardless of defendants' ultimate motivation, the fact that they deliberately stirred up and harnessed the racial animosity of others to serve their own ends is sufficient to find a violation of § 1982. See *Clark v. Universal Builders, Inc.,* 501 F.2d 324 (7th Cir.1974), certiorari denied, 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974) (although motivated solely by profit, defendant could still have violated § 1982 when it exploited opportunities created by racism to sell homes to black families at excessive prices).

■ As part of their claim that the evidence did not support the trial court's judgment, defendants challenge the court's allocation of the burden of proof and the exclusion of evidence regarding the allegedly adverse effects of spearing. Both claims are meritless. In allocating the burden of persuasion, the trial court followed the procedure prescribed by the Supreme Court for mixed-motive discrimination cases in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 242–46, 109 S.Ct. 1775, 1786–88, 104 L.Ed.2d 268 (1989). Once the plaintiffs showed that race was a motivating factor, the burden fell on defendants to show that "the interference would have occurred in the absence of racial prejudice." *Lac du Flambeau,* 843 F.Supp. at 1292. They failed abysmally to make such a showing.

The district court's approach was completely proper and consistent with our previous opinion in this case. Because the issue on remand was defendants' motivation, evidence of the alleged harmful effects of spearing would be relevant only if defendants could show that they specifically knew of and relied on such information in forming their own beliefs about spearing. They could not. Therefore, the district court properly excluded the evidence.

Finally, defendant's First Amendment challenge to the district court's injunction is without merit. The injunction is appropriately tailored and understandable to a reasonable person.

*Award of attorneys' fees to plaintiffs*

■ In awarding attorneys' fees, the district court is of course entitled to consider the results obtained. Here even the STA concedes the effectiveness of the permanent injunction, for defendants have ended the harassment and intimidation previously exerted against the LDF. These Indians' rights are no longer being violated as a matter of course.

The plaintiffs' motion for attorneys' fees and costs was well supported by the affidavits submitted and excludes time for unsuccessful claims. The STA's argument that this lawsuit was "simple" is completely without support. It has resulted in three district court opinions and two opinions by this Court. This action involved many issues and extensive discovery proceedings and required the refutation of numerous motions. The various issues justified plaintiffs' retention of a large law firm knowledgeable in civil rights litigation. It is absurd to contend that plaintiffs were not prevailing parties or that they had only a modicum of success.

■ In careful opinions, the district court explained why plaintiffs were awarded $159,-194.50 in attorneys' fees and an additional $82,647 for later work (Defendants' Separate App. 183–196 and Defendants' Br.App. A0036–A0040). Those opinions are persuasive that the amounts awarded were justified.

The judgments on the merits and on fees are affirmed.